1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA A. SIGALA, | Case No. 1:14-cv-01451-SAB |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE |
| v. | |
| CARMAX AUTO SUPERSTORES, LLC, | (ECF Nos. 4, 5, 12, 13, 14) |
| Defendant. | FOURTEEN DAY DEADLINE |

Currently before the Court are Defendants' motion to dismiss and motion to strike portions of the complaint. The Court heard oral arguments on October 29, 2014. (ECF No. 15.) Counsel Hallen D. Rosner and Joshua Charles Anaya appeared for Plaintiff Sigala, and counsel Jamie L. Keeton appeared for Defendant CarMax Auto Superstores California LLC (hereafter "CarMax"). Id. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the October 29, 2014 hearing, as well as the Court's file, the Court issues the following order.

## I.

## PROCEDURAL BACKGROUND

Plaintiff Patricia A. Sigala filed this action on August 7, 2014 in the Superior Court of California, County of Fresno against Defendant CarMax alleging violation of California's Consumer's Legal Remedies Act ("CLRA"), California Civil Code ¶ 1750 et seq., and Unfair

1    Competition Law ("UCL"), California Business and Professions Code § 17200 et seq., and fraud

2    and deceit.  (ECF No. 1-1.)  On September 17, 2014, Defendant removed this action to the

3    Eastern District of California on the basis of diversity under 24 U.S.C. § 1441.  (ECF No. 1.)  On

4    September 24, 2014, Defendant filed a motion to dismiss and a motion to strike portions of the

5    complaint.  (ECF Nos. 4, 5.)  The parties have consented to the jurisdiction of the Magistrate

6    Judge.  (ECF Nos. 8, 9.)

7         On October 15, 2014, Plaintiff filed an opposition to the motion to dismiss and motion to

8    strike and request for judicial notice.  (ECF Nos. 12, 13.)  Defendant filed a reply on October 21,

9    2014.  (ECF No. 14.)

10                                              **II.**

11                               **COMPLAINT ALLEGATIONS**

12        CarMax is a car dealership.  (Compl. ¶ 1., ECF No. 1-1.)  CarMax performs a "CQI/VQI

13   Inspection" prior to advertising and selling a vehicle as "certified."  During this inspection a

14   form, called a "CQI/VQI Checklist" is used to assist with the inspection.  This form lists all

15   components of the vehicle that were inspected as part of the Certification program for used

16   vehicles.  (Id. at ¶ 9.)  There are 230 items on the list that are inspected during the certification.

17   (Id. at ¶ 10.)  This list is not provided to the consumer, instead it is destroyed after the inspection.

18   (Id. at ¶¶ 11, 12.)  Plaintiff contends that this means CarMax cannot demonstrate that all

19   components were inspected and the destruction of the list violates the California Motor Vehicle

20   requirement that a dealer advertising and selling vehicles as certified must keep a completed

21   inspection report and verification.  (Id. at ¶ 13.)

22        A "CQI CarMax Certified Quality Inspection Certificate" is provided to the consumer by

23   being placed in the glove box of the vehicle.  (Id. at ¶¶ 11, 12.)  This certificate references a "125

24   point inspection" and does not include all components that are inspected during the certification

25   process.  The checklist does not match the certificate and there are more than 125 items

26   inspected on the vehicle.  (Id. at ¶ 12.)  Plaintiff contends that although the certification states

27   they conduct a 125 point inspection, some of the items are duplicative and cannot appear on the

28   same vehicle, such as manual and automatic transmissions.  (Id. at ¶ 14.)  Furthermore, the

1  certificate is not vehicle specific and is not a completed inspection report indicating all the

2  components of the vehicle that were inspected.  (Id. at ¶ 15.)

3        Plaintiff saw a television advertisement for CarMax that touted the benefits of purchasing

4  a certified vehicle.  She also heard radio advertisements and visited CarMax's website on several

5  occasions.  Plaintiff states that she wanted to purchase a vehicle from CarMax because of the

6  selection of inventory, and the fact that it advertises that inspections are performed on the

7  vehicles which it certifies for sale.  (Id. at ¶ 17.)  Plaintiff considered the fact that CarMax

8  certified its vehicles as a key selling point in deciding to purchase a vehicle from CarMax.  (Id. at

9  ¶ 19.)

10        Plaintiff had previously purchased a Hummer from CarMax after seeing it advertised on

11  CarMax's website.  When seeing the Hummer advertised on the website, Plaintiff had seen

12  CarMax's representations that it inspects and certifies all its vehicles.  (Id. at ¶ 18.)  The

13  representation that CarMax certified its vehicles was a key selling point in deciding to purchase a

14  vehicle from CarMax.  Plaintiff wanted to know the history of the vehicle and felt that CarMax's

15  certification would address her concerns regarding whether the vehicle had been in an accident

16  or had previously been a rental.  Plaintiff would not have purchased a vehicle from CarMax if it

17  did not certify its vehicles.  (Id. at ¶ 19.)

18        After purchasing the Hummer, Plaintiff discovered that it had a faulty odometer.  CarMax

19  refused to repurchase the Hummer or assist Plaintiff so she filed a complaint with the California

20  Department of Motor Vehicles.  After Plaintiff filed her complaint, CarMax agreed to repurchase

21  the vehicle from her.  (Id. at ¶ 20.)

22        Plaintiff needed to purchase another vehicle, so the day that she returned the Hummer she

23  spoke with Alma Lopez, a CarMax employee, about a 2010 Mercedes Benz GLK350 that was on

24  the lot.  (Id. at ¶¶ 1, 21.)  Ms. Lopez took Plaintiff on a test drive of the vehicle and they

25  discussed that CarMax inspects its vehicles.  Ms. Lopez also informed Plaintiff that CarMax

26  provides vehicle history reports to its customers.  (Id. at ¶ 22.)  Plaintiff was shown a vehicle

27  history report for the Mercedes which showed it was a "one-owner vehicle" and did not list any

28  accident history.  (Id. at ¶ 23.)

Plaintiff entered into a contract with CarMax to purchase the 2010 Mercedes Benz GLK350 on August 8, 2011.  (Id. ¶¶ 1, 6.)  CarMax advertised and sold the car as a "certified" vehicle.  (Id. at ¶ 7.)  When Plaintiff purchased the vehicle she not provided with the "CQI Certificate" prior to signing the contract and did not receive a completed inspection report indicating all the components that had been inspected.  (Id. at ¶¶ 7, 24, 25.)  Plaintiff only purchased the vehicle because CarMax advertised it as a certified vehicle.  (Id. at ¶ 26.)

At some point after purchasing the vehicle, Plaintiff began having extensive problems with it including, 1) the rear differential needed to be replaced at a cost of approximately $3,200.00; 2) the electrical wiring harness for the solenoid of the camshaft needed to be replaced; and 3) the electric driver's seat switch failed.  (Id. at ¶ 27.)  Plaintiff alleges upon further inspection she discovered that the vehicle had been a former rental vehicle and had been in a rear-end collision on or about May 25, 2011.  (Id. at ¶ 28.)  Although Plaintiff was informed that the vehicle was free from accident damage, CarMax's used certification program does not contain a standard for how much accident damage a vehicle can have sustained and still be advertised and sold as "certified".  (Id. at ¶ 8.)

Plaintiff contends that CarMax's certification of the vehicle did not comply with the requirements of California Vehicle Code section 11713.18[1] because Plaintiff was not provided with "a completed inspection report indicating all the components inspected."  (Id. at ¶ 29.) Plaintiff states that it is CarMax's policy not to provide the inspection checklist to buyers and this violates both the Vehicle Code and the Unfair Competition Law.  (Id. at ¶ 30-44.)

Plaintiff brings three causes of action.  The first cause of action seeks injunctive relief under the CLRA.  Plaintiff alleges the CLRA was violated by 1) advertising the vehicle as "certified" without providing, prior to sale, a completed inspection report indicating all components of the vehicle that had been inspected to meet CarMax's certification program; 2) selling the vehicle as certified without providing the inspection checklist; 3) labeling the vehicle as certified without providing the inspection checklist prior to sale; 4) failing to disclose the prior

---

[1] All further references to the Vehicle Code, Business and Professions Code, or Civil Code refer to the California Codes unless otherwise specified.

accident damage; 5) misrepresenting that the vehicle had not sustained accident damage; 6) inducing Plaintiff's reliance by providing her with a clean vehicle history report that did not disclose the prior accident damage; 7) advertising the vehicle as certified when it had sustained prior accident damage; 8) selling the vehicle as certified when it had sustained prior accident damage; 9) failing to clearly identify the vehicle's prior rental status; 10) advertising a defective vehicle as certified; 11) selling a defective vehicle as certified; 12) violating Vehicle Code § 11713.18(a); and 13) failing to maintain completed inspection reports.  (Id. at ¶ 53.)  Plaintiff seeks injunctive relief enjoining CarMax from such conduct in the future.  (Id. at ¶ 57.)

In cause of action two, Plaintiff contends that these same actions constitute violation of the UCL.  (Id. at ¶¶ 60-62.)  Plaintiff seeks injunctive relief enjoining CarMax from such conduct in the future.  (Id. at ¶ 65.)

The third cause of action alleges that CarMax's representation that its vehicles are certified and that it performs a rigorous 125 inspection on all its vehicles, the vehicle history report shown to Plaintiff without reference to prior accident damage, and the representation that the Mercedes was not a former rental were false.  (Id. at ¶¶ 68-69.)  Plaintiff contends that CarMax knew the representations were false when they were made and intended Plaintiff to rely on them when she purchased the vehicle.  (Id. at ¶¶ 70-71.)  Plaintiff was harmed by being induced to purchase a vehicle she would otherwise not have purchased.  (Id. at ¶ 72.)  Plaintiff contends that CarMax concealed and intentionally failed to disclose facts related to the condition of the vehicle which were known only to CarMax and Plaintiff could not have known.  (Id. at ¶¶ 75-78.)  CarMax's representations substantially influenced Plaintiff to purchase the vehicle.  (Id. at ¶ 79.)  Plaintiff seeks monetary damages and equitable relief.  (Id. at p. 17-18.)

### III.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not

require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79.   However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216.

**IV.**

**DISCUSSION**

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint and each cause of action fail to state a claim upon which relief can be granted.  (Mot. to Dismiss Pl.'s Compl. 3, ECF No. 4.)  Defendant argues that the complaint is largely premised on the false premise that Vehicle Code § 11713.18(a)(6), which requires auto dealers to provide a buyer with a list of "all components inspected", also requires the dealer to disclose the results of the inspection and any repairs made. (Mem. of P. & A. 7, ECF No. 4-1.)  Further, Defendant argues that Plaintiff has not pled the actual damages required to obtain standing under the CLRA and UCL.  (Id.)

A.      **Heightened Pleading Standard**

Defendants contend that the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure applies to the claims alleging fraud under either the CLRA or UCL.  (ECF No. 4-1 at 13.)  Plaintiff contends that the complaint contains two separate but related claims.  A

claim that Defendants misrepresented the condition of the vehicle purchased by Plaintiff and a claim that Defendants illegally represented the vehicle as certified.  (ECF No. 12 at 1.)

In a case similar to this, the Ninth Circuit considered the pleading standard to be used in claims under the CLRA and UCL where the plaintiff alleged a car dealer used a certification process to mislead customers to purchase vehicles.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1123 (9th Cir. 2009).  The court decided that Rule 9(b)'s heightened pleading standard applied to the claims for violations of the CLRA and UCL.  Kearns, 567 F.3d at 1125.

While fraud is not a necessary element of a claim under the CLRA or UCL, a claim that a defendant engaged in a unified course of fraudulent conduct is grounded in fraud and the complaint as a whole must satisfy the particularity pleading requirement of Rule 9(b).  Kearns, 567 F.3d at 1125; Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003).  Here, Plaintiff's claims are based upon a unified course of fraudulent conduct.  Plaintiff contends that CarMax misrepresents its used vehicles as certified in television and radio advertising, and that salespeople misrepresent the vehicles are certified to induce consumers to purchase them.

Specifically, Plaintiff contends that she was misled by CarMax's advertising and the salesperson that the vehicle she purchased was certified.  She claims that the salesperson informed her the vehicle had a single owner when it had been a rental vehicle, and also that the vehicle had not been in an accident when it had sustained accident damage.  Plaintiff's damages arise from her reliance on the alleged fraudulent misrepresentations and omissions of Defendant.  Therefore, the Court finds that Plaintiff's claims are grounded in fraud and the complaint "must state with particularity the circumstances constituting fraud. . . ."  Fed. R. Civ. P. 9(b).

This requires Plaintiff to plead with "more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal punctuation and citations omitted).  When a complaint or claim that is grounded in fraud fails to meet the heightened pleading requirements of Rule 9, the complaint or claim may be dismissed.  Vess, 217 F.3d at 1107.  As with dismissals pursuant to Rule 12(b)(6) the dismissal should be without prejudice if it appears that the pleading could be cured by amendment.  Id. at 1108.

**B.      Statutory Claims**

Plaintiff contends that CarMax violated the CLRA and UCL by 1) advertising the vehicle as "certified" without providing, prior to sale, a completed inspection report indicating all components of the vehicle that had been inspected to meet CarMax's certification program; 2) selling the vehicle as certified without providing the inspection checklist; 3) labeling the vehicle as certified without providing the inspection checklist prior to sale; 4) failing to disclose the prior accident damage; 5) misrepresenting that the vehicle had not sustained accident damage; 6) inducing Plaintiff's reliance by providing her with a clean vehicle history report that did not disclose the prior accident damage; 7) advertising the vehicle as certified when it had sustained prior accident damage; 8) selling the vehicle as certified when it had sustained prior accident damage; 9) failing to clearly identify the vehicle's prior rental status; 10) advertising a defective vehicle as certified; 11) selling a defective vehicle as certified; 12) violating Vehicle Code § 11713.18(a); and 13) failing to maintain completed inspection reports.  (ECF No. 1-1 at ¶¶ 53, 60.)

Other than the alleged violations due to failing to provide the inspection checklist, Plaintiff's allegations consist of two types of conduct.  Plaintiff contends that Defendant made affirmative misrepresentations and fraudulent omissions regarding the certification program and the vehicle.

1.      CLRA

The CLRA provides a list of unfair methods of competition and unfair or deceptive acts or practices that are unlawful if taken with the intended result or that result in the sale or lease of goods or services to a consumer.  Civ. Code § 1770.  Conduct that is likely to mislead a reasonable consumer violates the CLRA.  Colgan v. Leatherman Tool Group, Inc., 135 Cal.App.4th 663, 680 (2006).  "The CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " Colgan, 135 Cal. App. 4th at 680 (citations omitted).

///

1          2.       UCL

2          The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and

3    unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. "An act can be

4    alleged to violate any or all three of the prongs of the UCL—unlawful, unfair, or fraudulent."

5    Stearns v. Select Comfort Retail Corp., 763 F.Supp.2d 1128, 1149 (N.D. Cal. 2010) (quoting

6    Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1554 (2007)).  Plaintiff contends

7    that Defendant's conduct violates all three prongs of the UCL.

8          "For an action based upon an allegedly unlawful business practice, the UCL 'borrows

9    violations of other laws and treats them as unlawful practices that the unfair competition law

10   makes independently actionable.' "  Stearns, 763 F.Supp.2d at 1150 (citation omitted); see also

11   Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700, 718-19 (2001) ("An

12   'unlawful' business activity includes 'anything that can properly be called a business practice

13   and that at the same time is forbidden by law.").  To state a claim the complaint must set forth

14   with reasonable particularity the facts supporting the statutory elements of the violation alleged.

15   Stearns, 763 F.Supp.2d at 1150.  Since Plaintiff's unlawful claim arises under the conduct

16   precluded by the CLRA, the Court shall evaluate the alleged CLRA and UCL claims together.

17         3.       Vehicle Code Section 11713.18

18         As relevant here, Vehicle Code Section 11713.18 provides that a car dealer may not sell

19   any used car as certified unless, prior to the sale the dealer provides the buyer with a completed

20   inspection report indicating all the components inspected.  Veh. Code § 11713.18(a)(6).  A

21   violation of section 11713.18 is actionable under the CLRA.  Veh. Code § 11713.18(b).

22         4.       Standing

23         Defendant contends that a key issue for the claims under the CLRA and UCL is standing

24   and Plaintiff has failed to plead that she was damaged by an unlawful practice and suffered any

25   actual damages.

26         In this instance, while Plaintiff claims that the CQI certificate does not meet the

27   requirements of section 11713.18, she does not allege that the vehicle was not inspected pursuant

28   to CarMax's certification policy.  Plaintiff alleges that after the inspection the checklist was

destroyed.  Assuming the truth of Plaintiff's allegations, the lack of the CQI report or checklist does not invalidate the certification of the vehicle.  Plaintiff fails to show that she sustained any actual damages due to the failure to provide a completed inspection report indicating all the components inspected.  Plaintiff does not have standing to bring a claim based upon the failure to provide a completed inspection report indicating all the components inspected.   Although Plaintiff's complaint does not allege facts to establish standing, the Court shall grant leave to amend.   Therefore, the parties' arguments regarding whether the CQI certificate meets the requirements of section 11713.18 shall be addressed.

Plaintiff also contends that she was fraudulently informed that the vehicle she purchased was a single owner vehicle and had not been involved in any accident.  She later discovered that the vehicle had been a rental car and had been involved in a rear end accident.  The Court finds that Plaintiff has sufficiently alleged facts to establish standing in that she was subjected to an unlawful practice by the fraudulent representations of the salesperson.  Further, based upon these allegations Plaintiff suffered actual damages as the price she paid for the vehicle was more than she would have paid if she had been aware that it was a rental vehicle and had been involved in an accident.  Defendant's motion to dismiss for lack of standing on this ground is denied.

### 5.   Separate Acts

Defendant moves to dismiss Plaintiff's complaint on the ground that the complaint does not identify the acts that violated each of the subsections of the CLRA mentioned in the complaint.   However, under the federal rules the complaint does not need to "identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008).  A plaintiff need do no more than inform defendants of the factual basis of the claim to stave off dismissal for want of an adequate statement of the claim.   Johnson v. City of Shelby, Mississippi, 574 U.S. ___, 2014 WL 5798626, at *1 (Nov. 10, 2014) (per curiam).

In this instance, Plaintiff has provided Defendant with notice of the acts that are alleged to violate the CLRA and the specific sections which those acts violate.  Therefore, the motion to dismiss is denied to the extent it is based upon the failure to specify which acts violated the

1 subsections of the CLRA.

2       6.     California Vehicle Code Section 11713.18(a)(6)

3       The main thrust of Plaintiff's complaint is that the CQI CarMax Certified Quality

4 Inspection Certificate does not meet the requirements of Vehicle Code Section 11713.18(a)(6).

5 Plaintiff contends that CarMax was required to provide the checklist which discloses the results

6 of the certification inspection. Defendant argues that Plaintiff cannot state a claim under section

7 11713.18(a)(6) because the claim is based on disclosure obligations that do not exist. (ECF No.

8 4-1 at 14.)

9       Plaintiff alleges that she was misled regarding the condition of the vehicle. On the day

10 she purchased the Mercedes she spoke with Alma Lopez, a CarMax employee. (ECF No. 1-1 at

11 8.) Plaintiff was shown a copy of a vehicle history report for the vehicle which showed the

12 Mercedes did not have any accident history and was a one-owner vehicle. (Id.) Plaintiff was not

13 provided with the CQI certificate prior to signing the retail installment contract for the vehicle.

14 (Id. at 9.)

15      **i.**     **Failure to Provide Certificate Prior to Signing Installment Contract**

16       Plaintiff contends that she was not provided with the CQI certificate prior to signing the

17 retail installment contract in violation of section 11713.18. Defendant argues that it is irrelevant

18 whether Plaintiff received the CQI certificate prior to signing the installment contract. (ECF No.

19 14 at 7.)

20       Under California law a sale is deemed completed when the purchaser has paid the

21 purchase price or "**has signed a purchase contract or security agreement, and has taken**

22 **physical possession or delivery of the vehicle**." Cal. Veh. Code § 5901(d) (emphasis added).

23 Plaintiff does not state when she received the CQI certificate. The "sheer possibility that a

24 defendant has acted unlawfully" is not sufficient to state a claim, and "facts that are 'merely

25 consistent with' a defendant's liability" fall short of satisfying the plausibility standard. Iqbal,

26 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiff fails

27 to state a claim based upon not receiving the CQI certificate prior to signing the retail installment

28 contract.

ii.     **Failure to Provide CQI Checklist**

Pursuant to the Vehicle Code, Plaintiff alleges that CarMax is required to provide her with the checklist that was used in the certification process and that the CQI certificate issued by CarMax does not satisfy the requirements of the statute.  Plaintiff contends that rather than providing the checklist used in the inspection of the vehicle to the consumer it is destroyed.

Initially, the Court finds no case that has held that a car dealer is required to provide the buyer with the checklist that was used in the certification process or that the CarMax Certified Quality Inspection Certificate does not comply with the requirements of Vehicle Code section 11713.18(a).  See Overholt v. Carmax Auto Superstores California, LLC, No. 2:13-cv-2009-GEB-AC, 2014 WL 1379889, at *(E.D. Cal. April 7, 2014) (no showing "that section 11713.18(a)(6)'s requirement that dealers 'provide the buyer with a completed inspection report indication all components inspected' requires Defendant to disclose the result of the vehicle inspection"); Zambrano v. CarMax Auto Superstores, LLC, No. 13cv2107-WZH-WMC, 2014 WL 228435, at *5 (S.D. Cal. Jan. 21, 2014) ("Section 11713.18(a)(6) does not preclude the use of a generic form used for many different vehicles."); Stelzer v. CarMax Auto Superstores California, LLC, No. 13-cv-1788-LAB-JMA, 2013 WL 6815029 (S.D. Cal. Dec. 20, 2013) (finding similar allegations insufficient to state a claim for a violation of section 11713.18(a)); Gonzales v CarMax Auto Superstores, LLC, No. SACV 13-01391-CJC(RNBx) (C.D. Cal. November 5, 2013) at ECF No. 20 (the CQI certificate constitutes a completed inspection report indicating all components inspected and complies with section 11713.18).

Similarly, none of the cases provided by Plaintiff find that the CQI Inspection Certificate does not comply with the requirements of Section 11713.18(a).  Gullins, Jr. v. CarMax Auto Superstores, Inc., LLC, No. LA CV13-09398 JAK (CWx), at *8-9 (C.D. Cal. March 14, 2014) (finding the scope of the statute remains unresolved and the court was unable to determine if the CQI certificate is sufficient); Lee v. CarMax Auto Superstores California, LLC, No. CV-13-7648-MWF (VBKx) at *11 (C.D. Cal. December 2, 2013) (finding the statute to be ambiguous as to what is required to constitute a completed report); Knapp v. CarMax Auto Superstores California, LLC, No. CV 14-01112-BRO (SPx) at *12 (C.D. Cal. July 21, 2014) (finding scope

of statute remains unresolved and cannot be finalized on a motion to dismiss).

In Chulick-Perez v. Carmax Auto Superstores California, LLC, No. 2:13-cv-02329-TLN-DAD, 2014 WL 2154479 (E.D. Cal. May 20, 2014), the district court addressed whether an auto dealer is required to provide the inspection checklist or if the certificate provided by CarMax complies with section 11713.18(a)(6). Id. at *10.  The court considered the legislative history of the Car Buyer's Bill of Rights.  A draft of the bill required the report to "indicat[e] all the components inspected pursuant to the vehicle certification program and certif[y] that all of the inspected components meet the express written standards of the vehicle certification program." Chulick-Perez, 2014 WL 2154479 at *10 (citing Amend. to AB 68, May 5, 2005; ECF No. 9–1, Ex. 1 at 57).  However, the final bill deleted this language and requires only that the report indicate "all the components inspected".  Id.  Considering this language the court found that CarMax did not have a duty to reveal the internal inspection results under section 11713.18. Chulick-Perez, 2014 WL 2154479 at *11; see also Sandoval v. Mercedez-Benz, CV-13-0908 M M M (OPx) (C.D. Cal. Sept. 24, 2013).

Other courts looking to this same statutory history find it to be ambiguous as to what a completed inspection report requires.  These courts find that the deletion of the language from the bill could be interpreted as reflecting a concern that a substantive standard for all inspections would have to be met before a vehicle could be sold as certified.  See Gullins, No. LA CV13-09398 JAK (CWx), at *8-9; Lee, No. CV-13-7648-MWF (VBKx) at *11-12; Knapp, No. CV 14-01112-BRO (SPx) at *11.

When a federal court, pursuant to the exercise of diversity jurisdiction, resolves state law issues the federal court applies state law as if it is in effect sitting as a state court.  California Prolife Council Political Action Committee v. Scully, 989 F.Supp. 1282, 1290 (E.D. Cal. 1998). The federal court's role is to interpret the statute in the same manner as would the California Supreme Court.  Powell's Books, Inc. v. Kroger, 622 F.3d 1202, 1209 (9th Cir. 2010).

In California, the court's primary intent in interpreting a statute is to determine the Legislature's intent.  Delaney v. Superior Court, 50 Cal.3d 785, 798 (1990); Freedom Newspapers, Inc. v. Orange County Employees Retirement System, 6 Cal.4th 821, 826 (1993)

1   (superseded by statute on other grounds).   In so doing, the court first looks to the statutory

2   language as the words used are the best indicators of the Legislature's intent.   Freedom

3   Newspapers, Inc., 6 Cal.4th at 826.  If the language of the statute is clear and unambiguous there

4   is no need for construction or to look to Legislative intent.  Delany, 50 Cal.3d at 798.  When the

5   statute is ambiguous, the court considers evidence of the Legislature's intent beyond the words in

6   the statute such as the legislative history and the wider historical circumstances of the statute's

7   enactment.  Freedom Newspapers, Inc., 6 Cal.4th at 828.

8        The language of the statute itself states that the dealer must provide the buyer with "a

9   completed inspection report indicating all the components inspected" prior to sale.  Veh. Code §

10   11713.18(a)(6).  The parties in this action disagree as to what is required to comply with section

11   11713.18.  Plaintiff contends that the CQI/VQI checklist is the authentic record of CarMax's

12   inspection and the CQI certificate is a generic advertisement that lists what might be inspected

13   on a vehicle, not what was actually inspected.  The Court does agree with Defendant that the

14   language of the statute does not indicate that a car dealer is required to disclose the results of the

15   inspection itself nor does it require a car dealer to reveal more than the components that were

16   inspected.

17        In 2004, a substantially similar bill was introduced and passed by the Assembly

18   Committee.  California Bill Analysis, A.B. 68 Assem. 3/1/05.  This bill was vetoed by Governor

19   Schwarzenegger.  In his veto message, Governor Schwarzenegger stated concerns including the

20   vague definitions of certified vehicle and qualified technician and that the bill needed to be

21   further refined.  Committee Report, CA A.B. 68, 2005 WL 1896564, 6/27/2005; California Bill

22   Analysis, A.B. 68 Assem. 3/16/2005.

23        In A.B. 68 which was proposed in 2005, the bill's author, addressed this concern by

24   further clarifying the definition of certified vehicles, as well as other terms.  Committee Report,

25   CA A.B. 68, 2005 WL 1896564, 6/27, 2005; Bill Analysis, A.B. 68 Sen. 6/27/05.  The purpose

26   of the bill was to strengthen the protections afforded California car buyers by, as relevant here,

27   establishing a legal standard for "certified vehicles.  California Bill Analysis A.B. 68 Assem.

28   1/3/2005.  The original proposed text of section 11713.18(a)(6) read:

> Prior to sale, the dealer provides the buyer with a completed inspection report indicating all the components inspected pursuant to the vehicle certification program and certifies that all of the inspected components meet the express written standards of the vehicle certification program.

A.B. 68 2005-06 Leg. Sess. (Ca. January 3, 2005).

In promoting the bill, the author wrote "[s]ome California consumers have been sold unsafe rebuilt wrecks, lemon cars branded as a 'Lemon Law buyback,' or other problem vehicles under the guise they had passed rigorous inspections and were 'certified' to be a cut above the average used car.  AB 68 will prohibit these vehicles from being presented to unsuspecting consumers as 'certified.' " California Bill Analysis, A.B. 68 Sen., 6/14/2005.  A March 16, 2005 bill analysis states that the bill prohibits a dealer from "[a]dvertising or selling a used motor vehicle as "certified," or any similar descriptive term unless, prior to sale, the vehicle has been inspected by a technician qualified to inspect for collision repair and mechanical condition and the vehicle meets other specified criteria."  California Bill Analysis, A.B. 68 Assem. 3/16/2005.  The California Motor Car Dealers Association did not oppose a state standard for the sale of certified used vehicles, but believed the language used in the bill was ambiguous and would result in costly legislation.  Id.

A June 14, 2005 report to the Senate Judiciary Committee states "[t]his bill would prohibit a car dealer from advertising a used vehicle as 'certified' or any similar descriptive term that implies the vehicle has been certified to meet the terms of a used vehicle certification program, if, among other things, the odometer has been rolled back, the vehicle was reacquired under a warranty law, or the vehicle has sustained damage that after repair prior to sale substantially impairs its use or safety."  Committee Report CA A.B. 68, 2005 WL 1896563 (6/14/2005).  The report continued that the bill was a result of extended negotiations and discussions with interested parties.  Id.

The California Motor Car Dealers Association believed the negotiated "bill strikes an 'appropriate balance between setting minimum standards for which vehicles cannot be certified, and dictating the precise terms of dealer certification programs.'  While some consumer advocates might have preferred the bill to set a high level of standards for a car to be advertised

1   or sold as 'certified,' it must be acknowledged that the current negotiated amendments go some

2   distance towards excluding at least some very "low end" cars from being deceptively advertised

3   or sold as 'certified.' " California Bill Analysis, A.B. 68 Sen., 6/14/2005.

4        Following negotiations, section 11713.18(a)(6) read: "Prior to the sale, the dealer fails to

5   provide the buyer with a completed inspection report indicating all the components inspected."

6   The wording "pursuant to the vehicle certification program and certifies that all of the inspected

7   components meet the express written standards of the vehicle certification program" had been

8   deleted from the statutory language.  A.B. 68 2005-06 Leg. Sess. (Ca. June 9, 2005).

9        The report to the Senate Appropriations Committee states in relevant part that the bill

10  "prohibits a dealer from advertising a vehicle as 'certified' under certain circumstances, such as

11  when the odometer has been rolled back. . . ."  A.B. 68 Sen., 6/27/2005.  The bill was signed by

12  the Governor on July 26, 2005 and section 11713.18(a)(6) only required "a completed inspection

13  report indicating all the components inspected."

14       While the bill originally included language requiring the report to certify that all

15  inspected components meet the express written standards of the vehicle certification program to

16  be provided to the buyer, this language was left out of the enacted bill.  "The rejection of a

17  specific provision contained in an act as originally introduced is 'most persuasive' that the act

18  should not be interpreted to include what was left out." Murphy v. Kenneth Cole Prods., Inc., 40

19  Cal. 4th 1094, 1107 (2007) (quoting Wilson v. City of Laguna Beach, 6 Cal.App.4th 543, 555

20  (1992)).  The Court finds it persuasive that the language requiring a more extensive certification

21  report was deleted from the final version of the statute.  Had the Legislature intended the dealer

22  to provide the results of the certification inspection to the consumer they would have included

23  such language in the final version of the statute.  See Fresno Motors, LLC v. Mercedes Benz

24  USA, LLC, __ F.3d __, 2014 WL 5651930, at *7 (9th Cir. Nov. 5, 2014) (in interpreting section

25  11713.3(t)(2) notice requirement ,"[t]he fact that the legislature did not specifically require

26  notice . . . suggests that it did not see the need for such notice.")

27       While providing the CQI checklist may comply with the statutory requirement of

28  providing "a completed inspection report indicating all the components inspected", it is not

required.  Assuming that Plaintiff is able to establish standing, the complaint would be sufficient to state a claim based on whether the CQI certificate complies with the statute.  The issue of whether the CQI certificate is adequate to meet the statutory requirement is a factual issue.  It will be up to the trier of fact to determine whether CarMax's CQI certificate complies with the requirement that a vehicle may not be sold as certified unless the buyer is provided with a completed inspection report indicating all the components inspected prior to sale.  For this reason, to the extent that Plaintiff alleges a violation of section 11713.18(a)(6) due to the failure to provide the CQI checklist used in the inspection of the vehicle, Plaintiff fails to state a claim.

### iii.    CQI Certificate

Plaintiff argues that the CQI certificate is not a list of what is inspected on the vehicle, but is an advertisement of what might have been inspected.  Although the Court finds that Defendants are not required to provide the checklist to comply with the statute, Plaintiff also alleges that the CQI certificate does not indicate all of the components that were inspected.  Plaintiff contends that the CQI checklist contains 230 items that are inspected during the certification process.  (Compl. ¶ 9.)  Buyers are given a CQI certificate that lists fewer than 125 items that are inspected on a vehicle.  (Id. ¶¶ 12, 14.)

The CQI certificate contains duplicate items that cannot be on one vehicle, for example manual and automatic transmissions.  (Id. at ¶ 14.)  The CQI certificate contains items that do not exist on Plaintiff's vehicle.  (Id. at ¶¶ 12, 35.)  Further, Plaintiff states the certificate itself states that "We check over 125 points including (but not limited to) . . . ", and this language by itself shows that the certificate does not indicate all the components inspected.  (Id. at ¶ 15.)

At the pleading stage this would be sufficient to state a claim that the CQI certificate does not comply with section 11713.18(a).  While Defendants argue that the CQI certificate is a completed inspection report indicating all the components inspected within the meaning of section 11713.18, as discussed above, this is a factual issue that cannot be decided on a motion to dismiss.

### 7.    Destruction of CQI Checklist

Plaintiff contends that Defendant destroyed the CQI checklist that related to the vehicle

1   which Plaintiff purchased.  However, destruction of this checklist does not violate any law.

2   Sections 272.00 and 272.02 of title 13 of the California Code of Regulations relate to the

3   maintenance of certain business records.  There are no facts alleged that would lead the Court to

4   the conclusion that the checklist is a business record covered by section 272.00 or 272.02.  Nor

5   does it appear that destruction of the checklist would violate the CLRA or UCL even if it was a

6   business record.

7        **C.**     **Fraud**

8        The elements for a cause of action for fraud under California law are "(a)

9   misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity

10  (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

11  resulting damage."  <u>Kearns</u>, 567 F.3d at 1126 (quoting <u>Engalla v. Permanente Med. Group, Inc.</u>,

12  15 Cal.4th 951, 974 (Cal.1997)).  Rule 9(b) of the Federal Rules of Civil Procedure applies to

13  Plaintiff's state law fraud claims.  <u>Vess</u>, 317 F.3d at 1103.

14       Plaintiff contends that CarMax's representations that the vehicle was certified were false

15  because Plaintiff was not provided with a completed inspection report prior to purchasing the

16  vehicle, Ms. Lopez presented Plaintiff with a clean vehicle history report and represented the

17  vehicle was accident free and that it was a single owner vehicle.  Plaintiff's allegations of fraud

18  do not meet the heightened pleading requirements of Rule 9.

19       1.    <u>CQI Certificate</u>

20       As discussed above, although Plaintiff complains that she was not provided with a

21  completed inspection report, there are no allegations to show that the vehicle was not inspected

22  in compliance with the vehicle certification program.  Although the complaint states that Plaintiff

23  began having extensive problems with the vehicle, such as the rear differential and electrical

24  wiring harness for the solenoid of the crankshaft needed to be replaced and the electric driver's

25  seat switch failed, there are no allegations of when such problems occurred.  All that can be

26  inferred from the complaint is that Plaintiff experienced problems sometime after purchasing the

27  vehicle on August 8, 2011.

28       The complaint fails to include any allegations that the vehicle was not inspected in

compliance with the certification program or the vehicle was inspected and failed certification, knowledge that the vehicle was not inspected or failed certification, and an intent to defraud based on such knowledge.  Even if Plaintiff did not receive a completed inspection report that does not by itself mean the vehicle was not inspected in compliance with the certification program.  The mere allegations that the vehicle developed problems sometime after it was purchased does not provide sufficient factual detail to allow the Court to reasonably infer that CarMax did not inspect the vehicle in compliance with the certification program, Iqbal, 556 U.S. at 678-79; Moss, 572 F.3d at 969, and therefore cannot satisfy the particularity pleading requirement of Rule 9(b).  Further, the technical violation of failing to provide a completed inspection report is not sufficient to state a claim for fraud.

Plaintiff's allegations are insufficient to state a claim based on the representation that the vehicle was certified.  In any amended complaint, Plaintiff's allegations must be supported by specific facts regarding the inspection of the vehicle, rather than the allegations that the checklist was not provided and destroyed.  While this may be relevant to the fraud claim, to state a claim Plaintiff must allege facts that are sufficient to show why the omission of the results of the inspection was false and misleading.

2.   Vehicle History Report

Plaintiff states that CarMax misrepresented the condition of the Mercedes to Plaintiff because it has been a former rental vehicle and had sustained accident damage prior to Plaintiff purchasing the vehicle.  (Compl. § 8.)  Defendant represented the vehicle was accident free and does not have a standard for how much accident damage a vehicle can have and still be sold as "certified."  (Id.)

During the sales process and test drive, Ms. Lopez told Plaintiff that CarMax inspects the vehicles and provides a vehicle history report.  (Id. at ¶ 22.)  Plaintiff recalls being shown a vehicle history report for the Mercedes and that the report showed it was a "one-owner vehicle" and did not list any accident history.  (Id. at ¶ 23.)  Further investigation revealed the Mercedes had been a rental vehicle and had been involved in an accident.  (Id. at ¶ 28.)  While Plaintiff contends that Defendant knew the vehicle had formerly been a rental vehicle from accessing the

1   vehicle history report, Plaintiff contends that she was shown this report prior to purchase.

2   Therefore, the information on the report was disclosed to Plaintiff.   Further, Plaintiff makes

3   conclusory allegations that she was told the vehicle was not a former rental vehicle, but the

4   complaint does not contain any factual allegations of who, when, where, and what was said to

5   satisfy the particularity requirement of Rule 9.

6         Further, Plaintiff's fraud claims due to the allegations that the vehicle had been a rental

7   vehicle and had been in an accident are supported solely by conclusory allegations that are not

8   entitled to a presumption of truth.   Iqbal, 556 U.S. at 678.   Plaintiff's contention that CarMax

9   should have found the accident damage during the inspection is similarly a conclusory allegation

10  without any factual support.   Nor does Plaintiff plead any factual allegations to show how she

11  discovered these alleged circumstances.   Plaintiff does not include any factual allegations to

12  show that defendants had knowledge that the vehicle had been in an accident.

13        Plaintiff argues that Defendant misrepresented the history and condition of the vehicle.

14  Merely pleading that a misrepresentation is made is insufficient to state a claim.   Plaintiff must

15  also include sufficient factual allegations to show that defendants had knowledge of the falsity

16  and intent to defraud.   Plaintiff fails to state a claim for fraud.

17        3.   Fraudulent Omission

18        "[T]he elements of an action for fraud and deceit based on concealment are: (1) the

19  defendant must have concealed or suppressed a material fact, (2) the defendant must have been

20  under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally

21  concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must

22  have been unaware of the fact and would not have acted as he did if he had known of the

23  concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact,

24  the plaintiff must have sustained damage."   Hahn v. Mirda, 147 Cal. App. 4th 740, 748 (2007)

25  (quoting Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal.App.4th 603, 612–613

26  (1992)).

27        Plaintiff alleges that Defendants are under a duty to disclose the results of the inspection,

28  however, if anything is clear in this instance it is that the duty imposed by section 11713.18

1  remains open to dispute.  Plaintiff cannot state a claim for the failure to provide the inspection

2  checklist when CarMax reasonably believed that they were not required to provide it.  As to the

3  claims that CarMax failed to disclose the accident damage or that the vehicle had been a rental,

4  she fails to meet the particularity requirements of Rule 9 as discussed above.  Plaintiff has failed

5  to plead any facts to show that Defendant was aware of any material fact or that it failed to

6  disclose or actively concealed such a fact.

7          **D.      Punitive Damages**

8          Defendants move to strike, or in the alternative dismiss, the claim for punitive damages

9  arguing they have no possible bearing on the subject matter of the litigation.  (ECF No. 5-1 at

10  25.)  In order to establish a basis for punitive damages, Plaintiff must allege facts to show

11  Defendant "has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Plaintiff

12  argues that punitive damages have been sufficiently plead as CarMax knew it was a violation to

13  sell the vehicle as certified based upon the misrepresentations in selling the vehicle as certified.

14  However as discussed, Plaintiff has failed to state a claim that Defendant engaged in any

15  misrepresentation or fraud.  Accordingly, Plaintiff has not pled the required malice, oppression,

16  or fraud, to recover punitive damages.  Defendant's motion to dismiss the punitive damages

17  claim is granted.

18          **E.      Leave to Amend**

19          Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely

20  given when justice so requires,'" Fed. R. Civ. P. 15(a), and "[l]eave to amend should be granted

21  if it appears at all possible that the plaintiff can correct the defect," Lopez v. Smith, 203 F.3d

22  1122, 1130 (9th Cir. 2000) (internal citations omitted).  The Court will grant Plaintiff's an

23  opportunity to file an amended complaint to correct the deficiencies identified in this order.

24          **F.      Motion to Strike**

25          Defendants move to dismiss various portions of the complaint as redundant, immaterial,

26  or contrary to law pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  As the Court is

27  granting Defendant's motion to dismiss the complaint, the motion to strike shall be denied.

28  ///

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Defendant's motion to dismiss, filed September 24, 2014 is GRANTED;

2.     Defendant's motion to strike, filed September 24, 2014 is DENIED; and

3.     Within fourteen (14) days from the date of service of this order, Plaintiff shall file an amended complaint.

IT IS SO ORDERED.

Dated:   **November 10, 2014**

UNITED STATES MAGISTRATE JUDGE